The chancellor dismissed the bill which the plaintiff had brought seeking the specific performance of an option for the purchase of a restaurant.
From the pleadings, and testimony offered solely by the plaintiff, it appears that defendants importuned him to assist them in disposing of the establishment, which at the time was not in operation. The plaintiff advised the defendants that it would be to their advantage to obtain a license to sell light wines and beer and then reopen the business, as it could be sold more profitably as a going concern; whereupon the defendants, being without funds to accomplish this, secured a loan from him for $230 and gave him a note to evidence the debt, bearing interest after maturity and payable ninety days after date. At the same time, the defendants executed and delivered to the plaintiff an instrument setting out that in consideration of the loan, made for the purpose of buying the license and opening the restaurant, the defendants agreed to give the plaintiff an option to buy the business at any time within ninety days for the sum of $2,000.
On February 1949, forty-eight days before the expiration of the option and the due date of the note, the attorney for the plaintiff notified the defendants that his client was ready to exercise the option, and requested that they prepare the bill of sale and the assignment of the license, for which the plaintiff would pay $1,770 and cancel the note.
It was the view of the chancellor that the option was nothing more than a mortgage to secure the indebtedness and, the debt having been discharged, no obligation rested on the defendants to make the transfer. He also had the opinion that the option, having been "worth far more than the legal rate of interest on the loan," would if "treated as an absolute option * * * [be] usurious and void."
We find ourselves in disagreement with the chancellor. We think the loan and the option were, despite their coincident execution and maturity, independent transactions and created separate obligations on the part of the defendants to pay the amount of the note, as well as transfer the property if within the time limit the plaintiff chose to exercise the privilege of buying it. If the plaintiff elected not to purchase, the defendants were nevertheless indebted to him in the sum of $230. If he chose to take the property, the note not having previously been paid, he would simply be entitled to a credit of that amount on the purchase price.
Although the obligations were distinct, there was no failure of consideration for the option because a loan may be consideration for a contract, regardless of the liability to repay it. Estrada v. Hanson, 215 Minn. 353, 10 N.W.2d 223. As was pronounced in that case, we are not concerned *Page 170 
with the adequacy of the consideration, but only with the question whether it had value.
There is no evidence that the plaintiff was a lender of money or a real estate broker; or that he exacted the option as collateral for the loan. The defendants derived benefit from the unsecured loan, in the making of which the lender took some risk, because it put the property in such state as to make it more valuable, even at the price the plaintiff agreed to pay.
The option was not contingent upon the repayment of the loan; hence was not security for it. We can reach only the conclusions that the transactions were independent; that the loan was consideration for the option; that the plaintiff was entitled to a decree upon the payment of the agreed purchase price of $2,000.
Reversed.
ADAMS, C.J., and TERRELL and ROBERTS, JJ., concur.