# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2261

———————

In re: MJK Clearing, Inc.,      \*

     \*

Debtor.      \*

-----------------------------      \*

James P. Stephenson, Trustee for      \*

the Estate of MJK Clearing, Inc.,      \*    Appeal From the United States

     \*    District Court for the

Trustee-Appellee,      \*    District of Minnesota.

     \*

v.      \*

     \*

Leon A. Greenblatt; Banco      \*

Panamericana, Inc.; Loop Corp.;      \*

Nola, LLC; Repurchase Corp.      \*

     \*

Creditors-Appellants.      \*

———————

Submitted:  March 16, 2005
Filed:  May 24, 2005

———————

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

———————

HEANEY, Circuit Judge.

James Stephenson, trustee for the Estate of MJK Clearing, Inc. (MJK), brought this proceeding against Appellants Leon A. Greenblatt, Banco Panamericano, Inc., Loop Corp., Nola LLC, and Repurchase Corp. (collectively, the Greenblatt entities), for amounts due under promissory notes signed by the Greenblatt entities and

Greenblatt's personal guaranty of those notes. The bankruptcy court granted summary judgment to the trustee. Greenblatt appealed this decision to the district court,[1] which affirmed that the promissory notes were valid and enforceable. In the present appeal, the Greenblatt entities claim that the agreements cannot be enforced because there was a failure of consideration. We affirm the decision of the district court.

## BACKGROUND

Loop, Banco and Repurchase[2] are Illinois corporations formed by Leon A. Greenblatt. Nola is an Illinois limited liability company formed by Greenblatt. These entities operate as holding companies for investments and real estate. They held margin loan accounts with the firm R.J. Steichen & Co., a brokerage owned by John E. Feltl. The brokerage was sold to Stockwalk Group, Inc., which formed Miller, Johnson, Steichen, Kinnard, Inc. (MJSK), on January 1, 2001. MJSK later became a subsidiary of MJK, which itself was a subsidiary of Stockwalk.

In early 2001, the value of the stock held in the Greenblatt entities' margin loan accounts fell dramatically, resulting in a combined negative balance of over $7,100,000. MJSK issued margin calls in May 2001, requiring the Greenblatt entities to deposit funds to the accounts to cover the debit balances. No funds were deposited in the accounts, and the appellants entered into a series of agreements to settle the debt. In a letter dated July 12, 2001, the parties set out the terms relating to the purchase of the debit balances existing in the MJSK margin accounts. Greenblatt, Banco, and Loop agreed to execute promissory notes for a total of $3,850,000, and

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]Repurchase has filed for Chapter 11 bankruptcy protection, and the trustee is therefore not seeking relief from Repurchase.

all the entities agreed to take the actions necessary to transfer to MJSK and MJK the benefit of up to $3,000,000 in tax credits generated by another venture. On August 22, 2001, Banco and Loop each signed promissory notes in the amount of $1,425,000 plus interest, to be paid by August 1, 2002. Greenblatt signed a promissory note in the amount of $1,000,000 plus interest, to be paid by August 1, 2002, and executed a personal guaranty for payment of the amounts due under the Loop and Banco promissory notes in the event of a default. MJSK also negotiated a guaranty of up to $3,000,000 of the Greenblatt entities' indebtedness with John E. Feltl, who had originally opened the margin accounts.

In September 2001, MJK entered bankruptcy. MJSK assigned the promissary notes, Greenblatt guaranty, and rights to tax credits to MJK in June 2002 as part of a settlement relative to the bankruptcy. The notes matured August 1, 2002, and MJK submitted demand letters to the entities and Greenblatt. No payment was made and the tax credits were not delivered. MJK initiated this suit in February 2003, seeking recovery on the original margin accounts and in the alternative seeking recovery based on the July 12 Agreement, promissory notes, and Greenblatt guaranty. MJK moved for summary judgment on the claims rising out of the promissory notes, Greenblatt guaranty, and July 12 Agreement. The bankruptcy court granted this motion, and Greenblatt, Banco, and Loop appealed to the district court. The district court affirmed the grant of summary judgment, but reduced the award to MJK by $3,000,000.[3] Greenblatt, Loop, and Banco appeal.

## ANALYSIS

Appellants contend that the July 12 Agreement was essentially an agreement to sell the debit balance accounts to Greenblatt in exchange for the promissory notes,

___

[3]This amount had been paid by Feltl as part of a settlement with MJK of all claims, including the guaranty of the Greenblatt entities' debit margin accounts.

tax credits, and guaranty. They claim that there are genuine issues of material fact regarding whether the debit balances were actually transferred to Greenblatt. If they were not transferred, appellants argue, the July 12 Agreement, notes, and guaranty are not enforceable for failure of consideration.

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party. Credit Card Debt Solutions, Inc. v. Home Fed. Bank, 363 F.3d 805, 808 (8th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The parties have agreed that the applicable laws of Illinois and Minnesota are sufficiently similar that the court need not resolve which of the conflicting choice-of-law provisions in the parties' agreements should be applied.

Viewing the record in the light most favorable to the nonmoving parties leads to the conclusion that the debit account balances were not transferred to Greenblatt prior to August 2002. The parties agree that there was no physical transfer of the debit balances, nor was there any record of a transfer. The issue on appeal is whether this constitutes a failure of consideration rendering the July 12 Agreement, promissory notes, and Greenblatt guaranty unenforceable.

Consideration is something of value exchanged for a performance or promise of performance. E.J. Baehr v. Penn-O-Tex Oil Corp., 104 N.W.2d 661, 665 (Minn. 1960). It means "not so much that one party is benefitted, as that the other suffers detriment." Estrada v. Hanson, 10 N.W.2d 223 (Minn. 1943) (quoting Johnson v. Kruse, 285 N.W. 715, 717 (Minn. 1939); Weger v. Robinson Nash Motor Co., 172 N.E. 7, 10 (Ill. 1930). "When there is failure of consideration, a contract valid when formed becomes unenforceable because the performance bargained for has not been rendered." Franklin v. Carpenter, 244 N.W.2d 492, 495 (Minn. 1976); Watson v. Hobson, 81 N.E. 2d 885, 888-89 (Ill. 1948). Where a promisor received what he

bargained for, however, there is no failure of consideration. Miller v. O.B. McClintock Co., 297 N.W. 724, 730 (Minn. 1941). In addition, where one express term in the contract is not completed, the contract may nonetheless be enforceable where supported by other consideration. Estrada, 10 N.W.2d at 223; accord Stellwagon v. Schmidt, 234 Ill. App. 325 (Ill. App. Ct. 1924).

A promise to perform an act in the future may constitute consideration for a promissory note; in that case the promise, not the performance, is the consideration. Noreen v. Park Constr. Co., 96 N.W.2d 33, 37-38 (Minn. 1959); Keller v. Hyland Builders Corp., 186 N.E.2d 787, 789 (Ill. App. Ct. 1963). Non-performance of an act does not result in failure of consideration in these cases; rather, the non-breaching party may have a claim for damages. See Franklin, 244 N.W.2d at 495 (rejecting the argument that there was a failure of consideration where a promise to purchase insurance was never fulfilled).

The July 12 Agreement sets out the terms of the purchase of the debit balances existing in the MJSK margin accounts. The guaranty signed by Greenblatt indicates that it is related to the purchase of the debit balances of the Greenblatt entities. Despite the purchase and sale language in the July 12 Agreement and Greenblatt guaranty, the transfer of the debit balances was not the only consideration given to the defendants. The parties do not dispute that their agreements set out a reduction in the amount to be paid, and allowed the Greenblatt entities an additional year in which to make payment. Both the bankruptcy and district court correctly concluded that this was the substance of the agreement between the parties.[4] The reduction in the amount owed, and the agreement granting the Greenblatt entities an additional

---

[4]Because the parties do not dispute either the initial amounts owed, or that those amounts were reduced in the July 12 Agreement, the district court did not engage in improper fact finding to reach this conclusion.

year in which to make payment each constitute adequate consideration for the parties' agreements.

Because they were adequately supported by other consideration, the guaranty, promissory notes, and July 12 Agreement are valid and enforceable, despite the parties' failure to transfer the margin accounts. The Greenblatt entities therefore may not avoid the obligation of their promissory notes; they may, however, bring an action to recover the debit accounts.[5]

The Greenblatt entities have in large measure received what they bargained for; the promissory notes secured both a reduction in the debt owed and additional time to make payment. These concessions by MJK are consideration for the notes, and we conclude that there was not failure of consideration. We therefore affirm the decision of the district court.

———————————————

[5]At oral argument, counsel for MJK represented that MJK would do everything it could to complete the debit balance transfers. We assume it will do so.